**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**EDWARD ANTHONY LIGGINS**                                                                                  **PLAINTIFF**

**vs.**                                                                      **CIVIL ACTION NO. 3:12CV103-SAA**

**CAROLYN W. COLVIN,
Acting Commissioner of Social Security Administration**                        **DEFENDANT**

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Edward Anthony Liggins for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff protectively applied for disability on May 26, 2009, alleging disability beginning on April 14, 2009. Docket 10, p. 112-117. Plaintiff's claim was denied initially on August 3, 2009, and upon reconsideration on September 25, 2009. *Id.* at 58-63, 66-71. He filed a request for hearing (*Id.* at 72) and was represented by counsel at the hearing held on April 21, 2001. *Id.* at 27-53. The Administrative Law Judge (ALJ) issued an unfavorable decision on May 25, 2011 (*Id.* at 14-22), and on September 15, 2012, the Appeals Council denied plaintiff's request for a review. *Id.* at 1-3. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on April 22, 1963 and has a tenth grade education. Docket # 10, p. 112, 145. He was 45 years old at the time of his application. Plaintiff's past relevant work was as an assembler, groundskeeper and security guard. *Id.* at 147. Plaintiff contends that he became disabled before his application for disability when his hip was broken in an automobile accident. Docket 10, p. 141. The ALJ determined that plaintiff suffered from a "severe" impairment of "status post open reduction internal fixation of right acetabular fracture" (Docket 10, p. 16), but that the impairment did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 4165.926). *Id.* at 18. Based upon testimony by the vocational expert [VE] at the hearing and after considering the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to

> perform light work . . . except that the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand/walk for 4 to 5 hours in an 8-hour day in 45 minute increments. Additionally, the claimant can sit without limitation. . . . Finally, the claimant will require the use of a handheld assistive device for uneven terrain or prolonged walking.

Docket 10, p. 18.

The ALJ analyzed the record under applicable rulings and regulations and determined that plaintiff was less than fully credible in describing his claimed symptoms, limitations and subjective complaints, particularly concerning the intensity, persistence and limiting effects of these symptoms. *Id.* at . After evaluating all of the evidence in the record, including the hearing testimony of the plaintiff and a vocational expert, the ALJ held that plaintiff could perform the jobs of a quality inspector, hand packager and production assembler. *Id.* at 21. As a result, the

ALJ concluded that plaintiff is not disabled under the Social Security Act. *Id.*

Plaintiff claims that the ALJ erred by improperly evaluating plaintiff's credibility, failing to consider plaintiff's literacy, and by mischaracterizing plaintiff's medical records. Docket 14.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6] At step five, the burden shifts to the

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court must scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). A federal court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The

---

[7]20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[8]*Muse*, 925 F.2d at 789.

[9]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

**A. Whether the ALJ failed to properly consider plaintiff's credibility?**

Plaintiff contends that the ALJ erred when she granted little weight to plaintiff's allegations and subjective complaints and that the ALJ failed to properly consider SSR 96-7, 20 CFR 404.1529(c) and 416.929(c). Docket 14, p. 7-8. The Commissioner responds that the ALJ properly considered the necessary factors relating to credibility determinations, and after doing so, appropriately found that plaintiff's subjective complaints were not totally credible due to the inconsistencies in the record." Docket 15, p. 5.

It is clear that the ALJ did properly consider plaintiff's subjective complaints and the requisite factors necessary to assess plaintiff's credibility. She discussed plaintiff's pain complaints, his daily activities, his medical treatment and medications, and any precipitating and aggravating factors. Specifically, the ALJ noted that plaintiff testified "he experiences daily pain for which he takes over the counter pain relievers such as Tylenol and Aleve." Docket 10, p. 16. She acknowledged plaintiffs' testimony that "he cannot sit for more than 15 minutes at a time . . . experiences swelling and pain if he walks for more than 35 to 45 minutes. . . . requires use of a cane for ambulation . . . and cannot lift more than the weight of a gallon of milk." *Id.* at 19. Further, the ALJ discussed the limited medical treatment plaintiff has received, including the fact

that plaintiff cannot afford treatment. *Id.* Given that the Fifth Circuit has routinely held that the ALJ is in the best position to assess a claimant's credibility (*Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)[11], the court holds that the ALJ properly considered all of the factors necessary to properly evaluate plaintiff's credibility.

### B. Whether the ALJ's decision as to plaintiff's literacy was improper?

Plaintiff asserts that the ALJ improperly evaluated his literacy in determining that his "alleged illiteracy does not appear to impact more than minimally on the claimant's ability to perform work related activities [and] is non-severe. Docket 14, p. 11. The Commissioner responds that the ALJ's ultimate conclusion that plaintiff is capable of making a successful adjustment to other work despite his alleged illiteracy was proper and supported by substantial evidence. Docket 15, p. 8. The court agrees.

The ALJ properly considered plaintiff's school records, including his grades and the fact that he made it to the tenth grade with no indication in his records that he could not read. Further, plaintiff stated on his application for benefits that he could "read and understand English." Docket 10, p. 140. Last, the ALJ considered plaintiff's thirteen-year work history and determined that it supported a finding that the "representative jobs [provided by the VE] required no higher level of literacy than required by the claimant's past relevant work as a groundskeeper and security guard." Docket 10, p. 21.

The Commissioner admits that the ALJ erred in defining plaintiff's educational level to the VE, but asserts that the error was cured in the hypothetical concerning whether the proposed

---

[11]See also *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

jobs would require a higher level of literacy than plaintiff's past relevant jobs and noted specifically that plaintiff quit his past jobs because of physical complaints, not literacy issues. The court agrees that even though the ALJ erred initially, the error was harmless because the follow up hypothetical clarified that no additional literacy was required.

Additionally, plaintiff argues without any legal support that if the ALJ had properly determined that plaintiff was illiterate, a proper application of the Medical Vocational Guidelines ("Grids") would have resulted in a disability finding. Docket 14, 12. This argument is completely without merit. Plaintiff ignores the fact that the ALJ's RFC limited plaintiff to light – not sedentary – work, which means Table No. 2 would have been the proper table to apply to determine whether plaintiff "gridded out," not Table No. 1 as applied by plaintiff. Further, plaintiff misstates the law and asserts that he should have been considered an individual "Closely approaching advanced age" instead of a "younger individual age 45-49." Plaintiff was 45 as of his onset date. 20 C.F.R. 414.1563 specifically states that

> [w]e will use the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

Plaintiff only turned 50 on April 22, 2013, after the Commissioner's denial of benefits and while his federal court appeal has been pending. His argument that the ALJ should have applied the Grid rules relating to individuals closely approaching advanced age is wholly without merit.

### C. Whether the ALJ mischaracterized plaintiff's medical records.

Plaintiff contests the ALJ's statement that plaintiff declined treatment when the record

7

clearly showed he could not afford physical therapy, medicines and other medical treatment. Docket 14, p. 16. The Commissioner responds that the ALJ properly considered both plaintiff's lack of medical treatment since his accident and his inability to afford such treatment in considering his claim. Docket 15, p. 12. Additionally, the Commissioner asserts that the "ability to afford treatment is relevant only when the treatment in question would remedy an otherwise disabling impairment . . ." *Id.* at 13. According to the Commissioner there is no evidence indicating that plaintiff's impairments are disabling, with or without treatment.

The ALJ found that the plaintiff did not obtain formal physical therapy or other follow up medical treatment, but also that his failure to seek medical treatment was due to his inability to pay for the treatment. Docket 10, p. 19. However, she found no mention in the written record or from plaintiff at the hearing that plaintiff had sought medical attention from charitable medical providers or attempted to secure treatment in any other way. *Id.* In addition, the same medical record that states that plaintiff "can't afford formal PT," also states that "Patient committed to a home exercise program. Expect big improvement of quad atrophy." Docket 15, p. 249. Although the ALJ noted that plaintiff did not evince any evidence of pain or discomfort during the hearing, she did not find that observation to be a conclusive indicator of plaintiff' pain on a day-to-day basis. *Id.* at 20.

Ultimately, the ALJ concluded that the medical evidence indicated that plaintiff's fracture healed in proper alignment without defect (*Id.* at 257). Dr. Webb, an examining consultative physician, reported plaintiff walked without a limp, had negative straight leg raises in both the sitting and supine positions and was able to get on and off the examination table without difficultly. *Id.* at 259. The court concludes that the ALJ properly considered plaintiff's

8

medical impairments and records and, therefore, the argument to the contrary is without merit.

Last, plaintiff argues that the ALJ improperly applied the limitations established by Dr. Webb and that Dr. Webb's limitations equated to an RFC of sedentary work instead of light work. Docket 14, p. 14. The court agrees with the Commissioner that although a full range of light work requires the ability to stand or walk for six hours in an eight-hour day, the ALJ accounted for plaintiff's limitations by limiting the amount of standing and walking required in the RFC. Docket 15, p. 14. Further, as noted by the Commissioner, even if plaintiff were limited to sedentary work, the VE testified that a significant number of unskilled sedentary jobs exist in the national economy that plaintiff could perform. This argument is also without merit.

Reading the record as a whole, the court concludes that the ALJ's opinion is supported by substantial evidence and should be affirmed. It is clear that the ALJ reviewed the entire record, properly identified the relevant listed impairments, fully discussed the evidence that was contained in the record and concluded that the balance tipped toward functional ability in determining whether the plaintiff's impairment met or equaled a listed impairment. The ALJ performed a thorough analysis of the plaintiff's impairments and clearly considered the plaintiff's treatment records, along with the consultative exam by Dr. Webb performed at the ALJ's request. The plaintiff did not provide credible evidence that his alleged impairment affects his ability to work, and the ALJ more than adequately explained her reasons for questioning the plaintiff's credibility. The decision of the Commissioner should be affirmed.

## IV. CONCLUSION

After diligent review, the court holds that the ALJ's decision was supported by substantial evidence and must be affirmed. A final judgment in accordance with this

memorandum opinion will issue this day.

    SO ORDERED, this, the 26th of July, 2013.

                                                  /s/ S. Allan Alexander  
                                          UNITED STATES MAGISTRATE JUDGE